UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

:
EVEREST NATIONAL INSURANCE                :
COMPANY, *et al.*,                                    :
:
         Plaintiffs,                          :     Civil Action No. 07-722 (JAP)
:
         v.                                   :     **OPINION**
:
ROBERT SUTTON, *et al.*,                        :
:
         Defendants.                      :
:
_____ :

PISANO, District Judge.

      Presently before the Court is a motion by Plaintiffs/Counterclaim-Defendants Everest

National Insurance Company ("Everest National") and Everest Reinsurance Company

(together, "Everest") and Counterclaim-Defendant Daryl K. Bradley (collectively with

Everest, the "Counterclaim Defendants") to (1) dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) or, in the alternative, for summary judgment on Defendant-

Counterclaimant's ("Sutton") Fourth (civil conspiracy), Fifth (fraud) and Sixth (gross

negligence) counterclaims; (2) dismiss the First (fraud in the inducement) and Second (duress)

counterclaims pursuance to Rule 12(b)(6); (3) strike the Second (fraud in the inducement),

Third (duress), Ninth (express terms of the guaranties) and Tenth affirmative (same) defenses

pursuant to Rule 12(f).  For the reasons below, Plaintiffs' motion is granted.

I.  Background

      The facts of this case are set forth in detail in the Court's Opinion dated August 11,

2008, therefore only the facts relevant to this motion are discussed here.  This case arises out

of a program developed by Centrix Financial LLC ("Centrix"),[1] a Colorado limited liability company, involving sub-prime automobile loans.  The program was designed to provide insurance to lenders for borrowers' defaults on such loans originated and serviced by Centrix. The program was known as the Portfolio Management Program, through which Centrix arranged for insurers to provide default protection insurance ("DPI") to lenders.  DPI protected lenders from deficiency loan balance losses resulting from a repossessed motor vehicle.

From 1998 until August 2003, DPI coverage was provided under the program by Lyndon Insurance Group, Inc. ("Lyndon"), not a party to this case.  However, late in 2002, Centrix began to take steps to replace Lyndon as the DPI provider.  In October 2002, Centrix initiated negotiations with Everest with the goal of having Everest replace Lyndon as the DPI insurer for the PMP.

At the time, Everest was authorized to write property and casualty insurance in the jurisdictions in which it was licensed, including Colorado and New York.  As the entity that was going to provide DPI coverage, Everest National sought guidance from the Superintendent of the State of New York Insurance Department ("NYID") regarding the nature of the DPI insurance.  Declaration of Anthony Del Guercio ("Del Guerci Decl."), Ex. A.  In particular, Everest National asked the NYID whether the proposed insurance policy would constitute residual value insurance or financial guaranty insurance.  While Everest National was licenced to write residual value insurance, it was not licensed to write financial

---

[1]Centrix is not a party to this litigation.

guaranty insurance, nor as a multi-line property casualty insurer could it write such coverage. The NYID concluded that the proposed coverage, absent a bankruptcy order, did not constitute financial guaranty insurance and Everest National was permitted to write such coverage. *Id.*

Thereafter, the parties entered into a Program Administrator Agreement ("PAA"), which set forth the rights and obligations of the parties in connection with the underwriting and servicing of sub-prime loans and the DPI policy.  In connection with the PAA, the parties entered into an Excess of Loss Reinsurance Agreement ("Reinsurance Agreement").  Under the Reinsurance Agreement, Founders Insurance Company Limited ("Founders") reinsured losses incurred by Everest in excess of a specified amount that arose under the DPI Policy. As also set forth in the PAA, Sutton (individually and as owner of WK Capital Advisors Inc.), Wilshire Partners (by Sutton), and Centrix Capital Management LLC (by Sutton) (collectively, the "Guarantors") executed guaranties in favor of Everest securing the obligations of Founders under the Reinsurance Agreement ("Guaranties").

On February 7, 2007, Everest filed its complaint in this matter asserting that each defendant breached their obligations under the guaranties.  Everest moved for partial summary judgment seeking an order that the defendant Guarantors were required to fulfill an obligation incurred by Founders to post $70 million in security in an arbitration and ordering defendants to post the security.  The Court granted Everest's motion.

Thereafter, defendants sought and were granted leave to amend their answer and counterclaims.  An amended answer with counterclaims was filed on April 3, 2009 and this

motion followed.

II.  Analysis

A.  Previously Asserted Counterclaims

In granting Plaintiff's earlier summary judgment and 12(b)(6) motions, the Court dismissed Sutton's original counterclaims for fraud in the inducement and duress.  These same counterclaims are pled in the Amended Answer and Counterclaims ("Amended Answer") as the First and Second Counterclaims and are embodied in the Second and Third Affirmative Defenses.  Each of these are accompanied by the notation that these counterclaims and defenses are being "Asserted Only to Preserve Reconsideration and/or Right to Appeal."   Answer at 9, 22, 23.  Despite the clarity of this disclaimer, Everest nevertheless has moved to dismiss the First and Second Counterclaims on the basis that the Court has previously dismissed them.  In response to the motion, Defendants confirm that they are not seeking to re-assert or re-litigate the claims or defenses, and explain that the claims and defenses have only been included in the pleading to preserve them for potential reconsideration or appeal.  Opp. Brf. at 23.  In light of the express disclaimer in the pleading itself as well as Defendants' representations to the Court, the Amended Answer can hardly be construed as an attempt to re-plead previously dismissed claims and defenses.  Nevertheless, to the extent that there is any possible way it could be so construed, Everest's motion to dismiss these claims and defenses shall be granted.

B.  Fourth Counterclaim--Civil Conspiracy

Sutton's Fourth Counterclaim alleges that Counterclaim Defendants conspired to

4

engage in certain insurance business without the appropriate regulatory approval.  *See* Amended Answer at 26 (alleging Counterclaim Defendants sought "to engage in a business (including the financial guaranty business) in certain states and jurisdictions for which the [Counterclaim Defendants] did not have lawful license and authority from governmental authorities regulating such business.").  Sutton alleges that the means employed by Counterclaim Defendants to accomplish this allegedly unlawful act included providing misleading information government regulators and failing to pay millions of dollars in premium taxes.  *Id.*

There are four essential elements of a civil conspiracy:  "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).[2]  Importantly, "[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action.  *Board of Educ. v. Hoek*, 38 N.J. 213, 238 (1962).  Here, Counterclaim Defendants note that the "underlying wrong" upon which the Fourth Counterclaim is premised is a violation of state insurance regulations, for which there is no private right of action under either New Jersey or Colorado law.  *See, e.g, Specialty Ins. Agency v. Walter Kaye Associates, Inc.*, 1989 WL 120752, *2 (D.N.J. 1989); *Schnacker v.*

_____

[2]As discussed further below, there is an issue in ths case as to whether Colorado or New Jersey law applies to Sutton's tort claims.  Because there appears to be no material difference between the relevant civil conspiracy law of New Jersey and Colorado, the Court applies New Jersey law here.

*State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104 (Colo. App. 1992).  In response, Sutton argues that the Fourth Counterclaim is proper because it is premised upon Everest's and Bradley's alleged material misrepresentations to the counterclaimants.  A plain reading of the Fourth Counterclaim, however, reveals that this argument is simply without merit.  The Fourth Counterclaim shall be dismissed.

C.  Fifth and Sixth Counterclaims--Fraud and Negligent Misrepresentation

The Fifth Counterclaim alleges that the Counterclaim Defendants made material misrepresentations and omissions to Sutton "[d]uring 2003" to the effect that Everest was validly licensed to write the relevant insurance for the program.  Amended Answer at 27. Such misrepresentations and omissions allegedly took place "in Everest's offices in New Jersey, in the offices of Centrix Financial LLC, in Centennial, Colorado and in various interstate phone calls and other communications between Bradley and [Robert] Sutton during that period."  The Sixth Counterclaim is similar to the Fifth but alleges that Counterclaim Defendants negligently made such material misrepresentations and omissions.  *Id.* at 29.

Counterclaim Defendants argue that both the Fifth and Sixth Counterclaims are barred by the relevant statutes of limitations, which they assert is provided by Colorado law.  *See* Colo. Rev. Stat. § 13-80-101(1)(c) (three year limitations period for fraud); § 13-80-102 (two year limitations period for negligence).  According to Counterclaim Defendants, an analysis under the appropriate conflict-of-laws principles results in the application of Colorado law. Sutton, on the other hand, argues that the fraud and negligent misrepresentation claims arise under New Jersey law and are timely under New Jersey's six-year statute of limitations.

6

N.J.S.A § 2A:14-1.  In support of its argument that New Jersey law applies, Sutton asserts that "[a]ll of the agreements among the parties . . . contain a forum selection clause expressly selecting New Jersey as the appropriate forum, and New Jersey law as the controlling law." Opp. Br. at 14.

The Court finds Sutton's arguments with regard to the forum selection clauses to be disingenuous, contrary a position taken earlier in this litigation with respect to certain other counterclaims, and plainly without merit.  Sutton had earlier argued with respect to his original fraudulent inducement and duress counterclaims that such "tort-based theories" are "most appropriately determined by a Colorado jury, under Colorado law."  Defendants' Memorandum of Law in Support of Their Motion to Dismiss, Stay or Transfer Action ("Memorandum") (docket entry #4-2) at 6.  In so arguing, Sutton quoted *Financial One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005), which found that "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."  *Id.*  Indeed, in his earlier argument, Sutton expressly referred to the choice-of-law provision in the Guaranties and asserted that the clause did not apply to the tort-based claims because the provision was "narrow" and "provides merely that the [Guaranty] itself 'shall be governed by and construed in accordance with the internal laws of the state of New Jersey' as opposed to governing all claims arising out of or relating thereto."  Memorandum at 6, n.1

It should come as no surprise then that with respect to his argument on the instant motion Sutton does not specify or cite to *any* of the "agreements among the parties"

containing a choice-of-law provision that supports his position.  Rather, Sutton argues for a page and a half that forum selection/choice-of-law clauses "must be enforced" without providing a single citation to such a clause.  Opp. Brf. at 14-16.  Sutton presumably expects the Court to make assumptions as to which documents Sutton is referring to with respect to the instant motion, locate copies of them in the record of the case, and then locate the forum selection clause in each of those documents.  Fortunately, in their reply papers the Counterclaim Defendants assisted the Court in this regard.

The "agreements among the parties" that the Court presumes Sutton refers to are the DPI Policy, the PAA, the Reinsurance Agreement and the Guaranties.  Under the DPI Policy, Everest National is the insurer and Centrix is the insured (thus, none of the counterclaimants are parties to the policy) and, further, the policy does not contain a choice of law clause.  The Reinsurance Agreement is between Everest and Founders (again, none of the counterclaimants are parties to the agreement), and it provides that the agreement "shall be governed by the laws of the State of Delaware."  Geraghty Reply Decl., Ex. D at 14.  The PAA is by its terms to be "construed and enforced" in accordance with New Jersey law, but the PAA is between Everest and Centrix.  Connolly Decl., Ex. B.  Last, the Guaranties, to which two of the counterclaimants are parties, provide that they "shall be governed by and construed in accordance with" New Jersey law.  *Id.*, Ex. A.  However, as the Defendants themselves expressly argued earlier in this litigation, the tort-based counterclaims at issue do not arise out of the Guaranties, therefore, the choice of law provision in the Guaranties do not apply.

Consequently, the choice-of-law provisions in the agreements do not resolve the issue

of whether Colorado or New Jersey's statute of limitations applies.  The Court, therefore,

must undertake the relevant choice-of-law analysis.  "A federal court, sitting in diversity,

follows the forum's choice of law rules to determine the applicable statute of limitations."

*David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir.1994) (quoting *Ross v.*

*Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir.1985)).  New Jersey applies the "significant

relationship" test as found in the Restatement (Second) of Conflict of Laws.  *P.V. v. Camp*

*Jaycee*, 197 N.J. 132, 962 A.2d 453 (2008),

   The first step in the analysis is to determine whether an actual conflict exists, and

there is no dispute that an actual conflict exists between the statutes of limitations for the two

states.  In the next step, the Court turns to the Restatement; in particular, Section 148 is

relevant here (fraud and misrepresentation).  This section states in the pertinent part:

> (2) When the plaintiff s action in reliance took place in whole or in part in a
> state other than that where the false representations were made, the forum will
> consider such of the following contacts, among others, as may be present in the
> particular case in determining the state which, with respect to the particular
> issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the
> defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of
> business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction
> between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract

which he has been induced to enter by the false representations of the
defendant.

Restatement § 148(2).

Based upon a weighing of these factors, the Court finds that they favor the application
of Colorado law.  For example, the counterclaimants assert that their reliance on the alleged
misrepresentations by Everest resulted in their participation in the "Integrated Program" with
Everest.  Amended Answer, Counterclaims ¶ ¶ 79, 88.  As described in the Amended Answer,
this "Integrated Program" is "encapsulated in four key documents....(i) the DPI insurance
policy issued by Everest, (ii) the [PAA] between Centrix Financial and Everest, (iii) the
Reinsurance Agreement between Founders and Plaintiffs, and (iv) the guaranty instruments
executed by Centrix Financial, Founders and the Defendants."  Amended Answer at 12.
Considering these documents in the manner urged by Sutton -- as one integrated "program" --
it is clear that most of this "program" was centered in Colorado, where the counterclaimants
were located.  For example, integral to the program is the DPI Policy, which was issued in
Colorado.  Defendants' operations and the servicing of the sub-prime loans occurred from
Centrix offices in Colorado.  *See* Geraghty Reply Decl. Exh. B at 10.  This being so, the first
factor as well as the last weighs in favor of applying Colorado law.

The fourth factor as well favors application of Colorado law, as the counterclaimants
are all located in Colorado.  *See* Restatement § 148, cmt. i ("The domicil, residence and place
of business of the plaintiff are more important than are similar contacts on the part of the
defendant.")  Sutton is citizen of Colorado, other two counterclaimants are Colorado limited
liability companies with their principal place of business located in Colorado.  *Id.*  The

10

remaining factors are either neutral (e.g., the alleged misrepresentations were both made and received in each state) or not applicable under the instant facts.

Applying the Colorado statutes of limitations to the Fifth and Sixth Counterclaims, the Court finds they are time-barred.  The Counterclaims assert that the alleged misrepresentations were made during 2003, and the Counterclaims at issue were not asserted until April 13, 2009, well beyond Colorado's three-year limitations period for fraud and two-year limitations period for negligent misrepresentation.  The Fifth and Sixth Counterclaims, therefore, shall be dismissed.[3]

D.  Affirmative Defenses

Everest argues that the Defendants' Ninth, Tenth and Eleventh affirmative defenses should be stricken under Rule 12(f).  In the Ninth affirmative defense, Defendants assert that they are not required to fulfil Founders's obligations imposed by the arbitration panel, including the obligation to post $70 million in security pursuant to the arbitration award, and that Everest is "estopped to allege that Defendants are bound by any result in any arbitration proceeding between Founders" and Everest.  Amended Answer at 10-11.  The Tenth affirmative defense asserts that Founders's obligation to post security pursuant to the arbitration award does not "arise under the terms of the reinsurance agreement or the reinsured policies" and, therefore, Defendants alleges that they are not required to fulfill Founders's obligation.  Finally, the Eleventh affirmative defense states that the Guaranties are not enforceable against the Defendants "because they purport to underwrite losses in respect of a

---

[3]In light of the Court's decision, it need not reach Everest's additional arguments with respect to the Fourth, Fifth and Sixth Counterclaims.

business for which Plaintiffs did not have appropriate governmental authority" or was otherwise unlawful. *Id.* at 13.

The issues of (1) the enforceability of the Guaranties; and (2) whether the Guaranties require the Guarantors to post $70 million security pursuant to an arbitration award have been already resolved in this case, and the Court's decision dated August 11, 2008 (filed August 13, 2008) with respect to Plaintiffs' motion for partial summary judgment is dispositive of those issues. In that summary judgment motion, Plaintiff sought judgment that the Guarantors were obligated to satisfy Founders's obligation pursuant to the arbitration panel's Final Award, Phase I that required the Founders to post $70 million in security. *See* Docket Entry No. 62, Brief at 10 (stating that Everest was seeking "partial summary judgment ordering that, under the express terms of the Guaranties, the Guarantors are required to satisfy Founders' obligation to post security of $70 million in favor of Everest.") In opposition to Plaintiffs' summary judgment motion, Defendants argued that the motion was premature because discovery had not been completed and, in any event, the Guaranties were unenforceable as a result of fraud and/or duress. The Court rejected Defendants' arguments and found that Plaintiffs' were entitled to the partial summary judgment they sought.

In their Amended Answer, Defendants now seek to assert new defenses to the enforcement of the Guaranties that they did not raise in response to Plaintiffs' motion for summary judgment. There is nothing to indicate that these defenses could not have been raised at that time. As has been noted over and over again by a number of courts both within this circuit and elsewhere, a motion for summary judgment is "the 'put up or shut up' moment

in a lawsuit" for the non-movants.  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859

(7th Cir.2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or

shut up moment in a lawsuit, when a party must show what evidence it has that would

convince a trier of fact to accept its version of the events." (internal quotation marks and

citation omitted)).  By way of Plaintiffs' summary judgment motion, Defendants were given

their chance to "put up," and they simply did not raise the defenses they now seek to assert.

Nevertheless, Defendants argue that they are entitled to assert these new defenses to

enforcement of the Guaranties because the "law of the case" doctrine only extends to those

issues that were actually decided, and the Court has not ruled that the Guaranties are

enforceable with respect to "defenses which could be asserted before the deadline for

amendment [of pleadings] has passed."  Opp. Brf. at 24.  In making such an argument, it

appears that Defendants fundamentally misapprehend the nature and function of summary

judgment.  While it is true, as Defendants point out, that the Court's summary judgment

Opinion only addressed the validity of the defenses of fraudulent inducement and duress, this

is because those were the only defenses Defendants raised in response to the motion.  The fact

that the Court did not previously rule on other defenses *because they were not raised* does not

allow Defendants to continue to assert new defenses simply because they are permitted to

amend their pleadings.  The underlying issues having already been decided[4] on summary

_____

[4]The Court notes that there seems to be some confusion among the parties regarding its
August 11, 2008 Opinion and Order.  The confusion appears to arise from the fact that the
August 11 Opinion independently addressed in a single opinion two separate motions filed
months apart by Plaintiffs.  The first motion was brought *under Rule 12(b)(6)* to dismiss
Defendants' counterclaims, and the second was the motion for partial summary judgment seeking
to enforce the Guaranties.  In addressing the motion to dismiss, the Court was required to analyze
the counterclaims under the 12(b)(6) standard.  Applying that standard, the Court found that

judgment, the Ninth, Tenth and Eleventh affirmative defenses shall be stricken from the Amended Answer.

III.  Conclusion

For the reasons above, Plaintiffs' motion to dismiss counterclaims and strike affirmative defenses is granted.  An appropriate Order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.


Dated:  October 14, 2009

---

dismissal was appropriate for all but the third counterclaim.  August 11 Opinion at 17-18.  Such a finding, however, showed only that the third counterclaim met the minimal threshold pleading requirement and could not be dismissed pursuant to Rule 12(b)(6) as Plaintiffs' motion sought. This finding did not qualify in any way the decision with respect to the separately analyzed summary judgment motion (to which Defendants were required to respond with the evidence and not merely rest on pleadings), nor did it in any way leave the door open for Defendants to continue to assert new defenses with respect to issues already decided.