NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EVEREST NATIONAL INSURANCE COMPANY, et al.,** | Civil Action No. 07-722 (JAP) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| **ROBERT SUTTON, et al.,** | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon motion by Defendants Robert Sutton, WK Capital Advisors, Inc., Centrix Consolidated LLC and Centrix Capital Management, LLC (collectively, "Defendants"), requesting an instruction regarding the Discovery Confidentiality Order entered by the Court on December 20, 2007 (the "Discovery Confidentiality Order") [Docket Entry No. 249]. Specifically, Defendants seek the Court's guidance regarding whether certain information that is protected by the Discovery Confidentiality Order and which was produced in this litigation by Plaintiffs Everest National Insurance Company and Everest Reinsurance Company (collectively, "Everest") should be produced by Defendants in a litigation pending in the United States Bankruptcy Court for the District of Colorado (the "Colorado Adversary Proceeding"). Centrix Financial Liquidating Trust and Jeffrey Weinman, as trustee for Centrix Liquidating Trust (collectively, the "Trust"), were permitted to intervene with respect to Defendants' motion. The Trust argues that the Discovery Confidentiality Order should be modified to permit Defendants' production in the Colorado Adversary Proceeding. Everest

opposes modification of the Discovery Confidentiality Order as well as Defendants' production of Everest's confidential documents to the Trust.  The Court has fully reviewed and considered all arguments made in support of and in opposition to the requested modification of the Discovery Confidentiality Order and considers Defendants' motion without oral argument pursuant to FED.R.CIV.P. 78.  For the reasons stated more fully below, the Trust's request to modify the Discovery Confidentiality Order is DENIED and Defendants are instructed not to produce the requested information.

I.      **Background and Procedural History**

On June 28, 2008, Defendants filed the instant motion requesting an instruction regarding the Discovery Confidentiality Order entered in this matter by the Honorable John J. Hughes, U.S.M.J., on December 20, 2007.  According to the terms of the Discovery Confidentiality Order:

> (e)    Confidential Information shall be kept strictly confidential and shall not be disclosed, disseminated, discussed or otherwise published in whole or in part, directly or indirectly, by any manner, method or means whatsoever to any person, firm or entity for any purpose other than in connection with this action.  No Confidential Information produced or disclosed in this action may be used by any person, firm or entity for any purpose whatsoever except in connection with the prosecution, defense or settlement of this action including any appeals;
>
> (f)    Confidential Information shall only be used for the purposes of this action and shall not be disclosed, except by the prior written consent of the Producing Party or pursuant to further Order of the Court, to any person other than: (1) the parties' outside counsel, defined as attorneys and support staff who supervise, participate in, or appear on behalf of the Receiving Party in this action; (2) the parties, including any in-house counsel; (3) outside independent

persons (i.e., persons not currently employed by or consulting with any party), including experts and consultants retained by outside counsel for the purposes of assisting in this action, subject to executing an undertaking in the form of Exhibit A, annexed hereto; (4) the Court, jury, or other Court personnel, including stenographers or videographers present at any deposition, hearing or trial in this case; and (5) any person who, when being deposed, is reasonably believed (i) to be an author, sender or recipient of the Confidential Information, or (ii) to have knowledge relating directly to the Confidential Information;

\*\*\*

(i) If a party in possession of Confidential Information from a designating party receives a subpoena or other compulsory process from a non-party to this Order seeking production or other disclosure of such information, that party shall promptly notify the designating party, enclosing a copy of the subpoena or other compulsory process.  If the designating party timely seeks a protective order or moves to quash the subpoena, the party to which the subpoena or other compulsory process was issued or served shall not, to the extent permitted by applicable law, produce the Confidential information called for prior to receiving a court order or the consent of the designating party.

\*\*\*

(m) Upon final termination of this action, the parties and any other person subject to the terms hereof (not including Court personnel) shall, within sixty (60) days, assemble and return to the originating source all Confidential Information and all copies (whether electronic or otherwise), summaries, notes and abstracts thereof to the extent they disclose Confidential Information, and shall return all other material, memoranda or documents embodying such Confidential Information . . . .

(*Id*. at 3-4; 5; 6-7).  While this matter was pending in this Court, Defendants also were (and remain) involved in the Colorado Adversary Proceeding.  In connection with the Colorado

Adversary Proceeding, the Trust propounded discovery requests on two of the Defendants in this case (Robert Sutton and Centrix Consolidated, LLC). In addition to other information, these requests sought copies of all documents produced in this litigation, regardless of any confidentiality designation.[1] (Trust Br. at 7).

Upon receiving the Trust's document requests, Defendants followed the procedure set forth in the Confidentiality Order and attempted to obtain Everest's permission to produce documents to the Trust in connection with the Colorado Adversary Proceeding that were produced by Everest in this litigation and that were designated as Confidential Information. Everest refused to permit Defendants to produce its confidential documents to the Trust. The Trust filed a motion to compel in the Colorado Adversary Proceeding on May 19, 2010. To this Court's knowledge, the Colorado Bankruptcy Court has not yet ruled on that motion. (Def. Motion ¶ 5).

On June 1, 2010, the District Court entered a Final Judgment by Consent in this matter. All parties to this matter agree that the Final Judgment by Consent operates as a "termination of this action" as that phrase is used in the Discovery Confidentiality Order. (*Id*. at 6, ¶ (m)). As provided for in the Discovery Confidentiality Order, on June 23, 2010, Everest requested the return of all of its documents that were designated as Confidential Information. Based on its competing obligations in this matter and the Colorado Adversary Proceeding, Defendants filed the instant motion asking the Court how to proceed.

---

[1] The Trust also sought to obtain documents produced by Everest in another matter filed in the District of New Jersey: *Everest Reinsurance Company v. Founders Insurance Company Limited*, Civil Action No. 3:08-CV-00808 (JAP) (the "Fraud Action"). (Trust Br. at 7, n.3).

After Defendants filed the instant motion, the Trust moved to intervene with respect to same and was granted permission to do so. The Trust argues that the Discovery Confidentiality Order should be modified to permit Defendants to produce the documents that have been withheld, namely those produced by Everest in this litigation that Everest designated as Confidential (the "Withheld Documents"), to the Trust in the Colorado Adversary Proceeding. In the first instance, the Trust argues that under FED.R.CIV.P. 34(a), Defendants have to produce all documents in their "possession, custody, or control." Relying on *In re Bankers Trust*, the Trust claims that this is true "[e]ven where requested documents are subject to other arrangements that may purport to restrict disclosure[.]" (Trust Br. at 11). The Trust therefore argues that Rule 34, which requires a party to "produce all relevant documents in its possession, custody or control on demand . . . certainly overrides confidentiality concerns between private litigants." (*Id*. at 12). As such, the Trust appears to claim that, despite the existence of the Discovery Confidentiality Order, Defendants should be compelled to produce the Withheld Documents.

The Trust also argues that the balance of interests weighs in favor of modifying the Discovery Confidentiality Order to permit the Trust to obtain the Withheld Documents. In this regard, the Trust argues that it is unaware of any law that would support the conclusion that the Trust should seek to obtain the documents directly from Everest via subpoena rather than from Defendants via document request made pursuant to Rule 34. Further, the Trust claims that it has "already engaged in protracted and extensive discussions with Defendants and Everest as to the scope of the discovery sought and has [not only] limited its requests in an attempt to avoid receiving any of Everest's proprietary information" but has also "entered into a Confidentiality

5

Agreement pledging that any documents marked 'Confidential' remain protected." (*Id*. at 13). In addition, the Trust claims that "Everest should have no reason to prevent the Trust from gaining access to these documents as it is one of the largest claimants in the Centrix Bankruptcy" and given its involvement "in the underlying bankruptcy as well as a past participant in Centrix's insurance operations, it cannot simply refuse to participate in discovery because documents might be subject to a Discovery Confidentiality Order in this Court." (*Id*. at 14). Indeed, the Trust claims that "Everest must do more than make blanket statements that documents consist of 'sensitive, confidential trade secrets and other proprietary information' to warrant continued protection" of the Withheld Documents." (*Id*.) Finally, the Trust argues that "there is no doubt" that the Withheld Documents "are relevant and probative to the Trust's claims in the Colorado Bankruptcy Litigation" as "Everest was one of Centrix Financial's insurers, Everest has been engaged in multiple lawsuits with Sutton, and Everest is a claimant in Centrix's bankruptcy." (*Id*.) Consequently, the Trust argues that the Discovery Confidentiality Order should be modified.

     Everest opposes the Trust's efforts to modify the Discovery Confidentiality Order. Everest argues that under *Pansy v. Borough of Stroudsburg*, the balance of factors weighs against modifying the Discovery Confidentiality Order. 23 F.3d 7772, 784-90 (3d Cir. 1994). Everest emphasizes that in December 2007, this Court determined that there was good cause to enter the Discovery Confidentiality Order and that that good cause is equally present today. Indeed, Everest argues that the Withheld Documents disclose Everest's confidential and proprietary business information, including Everest's trade secrets, information related to the creation, implementation and administration of the Default Protection Insurance program (the "DPI"),

which Everest created exclusively for Centrix Financial, LLC, as well as loss and claims data. Everest also argues that given the existence of the valid Discovery Confidentiality Order the Withheld Documents are not in Defendants' "possession, custody or control" within the meaning of Rule 34.

Further, Everest claims that many of the documents sought by the Trust are not relevant to the Colorado Adversary Proceeding.  In this regard, Everest argues that discovery related to claims of fraud, civil conspiracy and breach of contract (i.e. the discovery produced by Everest in this litigation and in the Fraud Action) is inherently different than that at issue in the Colorado Adversary Proceeding and "inherently involves a larger universe of relevant documents[.]" (Everest Br. at 15).  In addition, Everest claims that the Trust is already in possession of many of the documents its seeks to obtain, such as "written communications between Everest and Centrix/Sutton[,]" and yet, despite this fact, the Trust does not explain why it needs such documents reproduced.  (*Id*. at 16).

In addition, Everest claims that despite its best efforts, it has not been able to amicably resolve this discovery dispute with the Trust.  Everest notes that it has "offered to produce all of the communications between Everest and the Defendants, along with other documents in the Defendant's possession that do not include Everest's internal documents, so long as the Trust[] is willing to enter into an appropriate confidentiality order and will pay for the reasonable costs associated with the production." (*Id*. at 17).  Everest contends that the Trust rejected this offer both demanding that Everest "produce all of its internal documents which 'discuss the conduct of Centrix Financial, LLC or its affiliates, officers or employees or the impact of such conduct on Centrix Financial, LLC or its customers and credit unions'" and refusing to compensate Everest

7

for its reasonable costs. (*Id.*) Everest claims that the Trusts demands are unreasonable because the Trust has not explained why it is entitled to any of Everest's internal documents "or what is meant by documents that 'discuss the conduct of' or 'impact' Centrix." (*Id.*)

## II.     Analysis

### A.     Federal Rule of Civil Procedure 34

Rule 34(a) of the Federal Rules of Civil Procedure states that:

> A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession custody, or control . . . .

According to Rule 26(b):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

As is clear from the explicit language of the Rules, Rule 34(a) relies on Rule 26(b) to set forth the permissible scope of discovery and here, the scope of discovery sought by the Trust is "limited by court order" within the meaning of Rule 26(b). Indeed, the Discovery Confidentiality Order entered by Judge Hughes on December 20, 2007 specifically prevents Defendants from producing Everest's confidential documents to the Trust absent Everest's consent or a court order. (Discovery Confidentiality Order at 5, ¶ (i))). Thus, contrary to the Trust's assertion that "[t]here is no applicable exception in the Federal Rules of Civil Procedure that allows Defendants to withhold relevant documents which are in their possession, custody and control" (Trust Br. at 12), Rule 26(b) creates such an exception: it permits the scope of discovery to be

"limited by court order," which, as just stated, the Discovery Confidentiality Order does.  As such, the Trust's argument that "Rule 34 certainly overrides confidentiality concerns between private litigants" is completely without merit.  (*Id*.)  Indeed, given its explicit reliance on Rule 26(b) to set forth the permissible scope of discovery, Rule 34 specifically contemplates that confidentiality concerns protected by court order may alter the scope of permissible discovery.  As a result, absent modification of the Discovery Confidentiality Order, the Trust has no right to obtain Everest's confidential documents from Defendants.

### B. Modification of Confidentiality Orders

In the Third Circuit, "[t]he party seeking to modify [an] order of confidentiality must come forward with a reason to modify the order."  *Pansy*, 23 F.3d at 790.  "Once that is done," the Court engages in the same balancing test it employed in determining whether good cause existed to enter the confidentiality order in the first instance, with the addition of consideration of the original parties' reliance on same, to determine "whether good cause still exists for the order."  *Id*.  While there is not an exhaustive list of factors considered by the Court in determining whether good cause for a confidentiality order exists, factors considered include: the reliance by the original parties on the confidentiality order as well as

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-91).

Here, the Trust is requesting that the Discovery Confidentiality Order be modified so that it may obtain documents from Defendants to use in the Colorado Adversary Proceeding. The Trust argues that if the Discovery Confidentiality Order is not modified, then it may be severely prejudiced and the Colorado Adversary Proceeding will be unnecessarily delayed. (*See* Trust Br. at 5). The Court is not overly impressed with the reason put forth by the Trust to modify the Discovery Confidentiality Order. The Court notes that the Trust is not seeking to modify the Discovery Confidentiality Order because it believes that the Withheld Documents are of interest to the public and should be publicly disclosed, but instead, is doing so because it wants to utilize the Withheld Documents in another private litigation. Indeed, the Trust has even agreed that, if disclosed, the Withheld Documents would be protected under a separate confidentiality agreement that the Trust has already signed. (*See Id*. at 12, 13). The fact that in one breath the Trust seeks modification of the Discovery Confidentiality Order because Everest has not established good cause for the continued protection of the Withheld Documents and in the next states that, if produced, the Withheld Documents would remain protected under the Trust's confidentiality agreement strains the credibility of the Trust's request.

Moreover, the Court finds the Trusts claims of prejudice and unnecessary delay to be overstated. In this regard, the Court notes that the denial of the Trust's request to modify the Discovery Confidentiality Order would not preclude the Trust form obtaining the information it seeks. Instead, the Trust would be, as it always has been, able to seek to obtain the Withheld Documents directly from Everest via subpoena. While resort to such third-party practice may be

more time consuming for the Trust than obtaining the Withheld Documents from Defendants, it is a viable option.

Nevertheless, for the purpose of deciding the instant motion, the Court assumes that the reason put forth by the Trust to modify the Discovery Confidentiality Order is sufficient to trigger the Court's good cause balancing test. Under this test, the Court finds that good cause still exists for maintaining the Discovery Confidentiality Order in its entirety and precluding the Trust from obtaining the Withheld Documents from Defendants. In this regard, the Court finds that Everest has a legitimate private interest in maintaining the confidentiality of the Withheld Documents. The Withheld Documents include Everest's business information, such as Everest's trade secrets, information related to the creation, implementation and administration of the DPI program, as well as loss and claims data, which Everest maintains as confidential and proprietary. This information is not publicly known or available to the public and Everest clearly has a legitimate business interest in maintaining the confidentiality of same. Indeed, the Court finds that the public disclosure of the Withheld Documents would seriously harm Everest's legitimate business interests as other companies would be able to unfairly use Everest's otherwise confidential and proprietary business information to their competitive advantage. Thus, while disclosure would not necessarily cause Everest "embarrassment" *per se*, it would certainly harm Everest's competitive position in the marketplace.

In addition, the Court finds that the information at issue is not important to public health or safety. In fact, this matter does not involve issues important to the public. Instead, this case involves private litigants (Everest is not a public entity or official; indeed none of the parties to this matter are) and centers around private litigants' dispute over an inherently private business

transaction. While Defendants obviously had a legitimate purpose in seeking the Withheld Documents in defending this action (i.e. the Withheld Documents were relevant to the claims and defenses at issue in this case) and while sharing the information contained in same with Defendants would promote fairness and efficiency in this litigation, the Court determined that there was good cause to protect the Withheld Documents and therefore limited the extent to which the information contained therein could be shared by entering the Discovery Confidentiality Order. Furthermore, Everest relied on the Discovery Confidentiality Order when it produced the Withheld Documents to Defendants.

Under these circumstances, the Court finds that good cause continues to exist to maintain the Discovery Confidentiality Order in its entirety. Indeed, nothing has changed since the Discovery Confidentiality Order was entered. Everest continues to have a legitimate private interest in maintaining the confidentiality of the Withheld Documents, which consist of its confidential and proprietary business information. This legitimate interest would still be harmed if the Withheld Documents were publicly disclosed, because such disclosure would give Everest's competitors an unfair advantage in the marketplace. Everest remains a private litigant and this matter, which concerned a dispute over an inherently private business transaction, continues to be of little legitimate public interest.

Moreover, while the Trust now seeks the Withheld Documents for an apparently legitimate purpose: because they are relevant to the Colorado Adversary Proceeding, the Court finds that the Trust's request for all of the Withheld Documents is overbroad. In this regard, the Court agrees with Everest that the set of documents relevant to this litigation and the Fraud Action is larger than the set of documents relevant to the Colorado Adversary Proceeding. This

is true regardless of the fact that "Everest was one of Centrix Financial's insurers, Everest has been engaged in multiple lawsuits with Sutton, and Everest is a claimant in Centrix's bankruptcy." (Trust Br. at 14).  The simple truth is that the scope of permissible discovery in this Guaranty litigation and the Fraud Action necessarily differs from that in the Colorado Adversary Proceeding.  As a result, while the Trust may legitimately be seeking the production of some of the Withheld Documents, modifying the Discovery Confidentiality Order to permit the Trust to obtain all of them would not promote fairness and in fact would be inconsistent with the Federal Rules of Civil Procedure.  Further, the Court finds that the most efficient means to resolve the dispute as to which documents the Trust should be permitted to obtain is for the Trust to seek to obtain Everest's documents directly from Everest, the party with the actual interest in the underlying documents, via subpoena.  As such, on balance, the Court finds that there is still good cause to protect disclosure of the Withheld Documents under the Discovery Confidentiality Order.

     In coming to this conclusion, the Court is aware that the Trust is not looking for the wholesale public disclosure of the Withheld Documents.  Instead, the Trust has agreed that the Withheld Documents are entitled to protection, stating that they would be subject to a confidentiality agreement already signed by the Trust.  (Trust Br. at 12, 13).  This fact, however, only serves to reinforce the Court's conclusion that the Discovery Confidentiality Order is still supported by good cause and should not be modified.  Indeed, the Trust simply cannot establish that the secrecy interests which supported the entry of the Discovery Confidentiality Order in the first place deserve less protection now than they did when that Order was granted when the Trust has acknowledged that the Withheld Documents are still entitled to be treated as confidential.

**III.     Conclusion**

For the reasons stated above, the Trust's request to modify the Discovery Confidentiality Order is denied and Defendants are instructed not to produce the Withheld Documents to the Trust.  An appropriate Order follows.

Dated: October 28, 2010

                                                              s/ Tonianne J. Bongiovanni
                                                   **TONIANNE J. BONGIOVANNI**
                                                   **United States Magistrate Judge**